<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAWMEEN FITZGERALD, | : | |
| | : | |
| Petitioner, | : | Civil No. 13-1315 (PGS) |
| | : | |
| v. | : | OPINION |
| | : | |
| CHARLES WARREN, | : | |
| | : | |
| Respondent. | : | |

SHERIDAN, DISTRICT JUDGE

Petitioner Dawmeen Fitzgerald ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 9.) For the reasons stated below, the Petition will be denied.

## I. BACKGROUND

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will recount salient portions of the recitation of facts as set forth by New Jersey Superior Court, Appellate Division:

> For several years until their arrests in late 2002, [Defendants Dawshon Fitzgerald, Dawud Fitzgerald and Dawmeen Fitzgerald] were trafficking cocaine and heroin throughout New Jersey ("the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Fitzgerald organization" or "the organization"). The Fitzgerald organization consisted of numerous "employees," who were involved in selling, transporting, and packaging the narcotics.

At trial, two members of the Fitzgerald organization—Angel Aviles and Sherrodd Britt—explained how the Fitzgeralds divided up the responsibilities for the organization. Dawmeen was responsible for the cocaine, Dawshon was in charge of the heroin, and Dawud was the "enforcer," ensuring that all of the organization's operations ran smoothly.

The Fitzgerald organization used an apartment in Newark (the Newark apartment) as a "lab" for cutting and packaging heroin and cocaine. After the heroin was obtained from a supplier, the employees broke it down into smaller quantities and packaged it for distribution.

The Fitzgerald organization sold the narcotics at an apartment in Elizabeth (the Elizabeth apartment). On any given day, three or four people worked inside the Elizabeth apartment selling drugs, while three or four others worked outside as lookouts. Aviles, Britt and Shariek Hiett were the primary sellers. Those inside of the house communicated with the lookouts using walkie-talkies. Dawud came to the Elizabeth apartment every day to check on operations.

...

The Fitzgerald organization kept a .38 caliber handgun and a TEC 9, an assault firearm, at the Elizabeth apartment. At some point, the .38 caliber handgun was missing, and the TEC 9 was also removed from the house and taken to another location. Dawshon also had a .40 caliber handgun that he had taken from Jahmin Muse, an employee of the Fitzgerald organization, which was sometimes kept at the Elizabeth apartment.

...

On November 6, 2002, Detective Clifford Spencer attempted to make an undercover purchase of raw, uncut heroin from John [uncle to the three defendants]. Spencer met John at the marina in Elizabeth. During their encounter, John indicated that "we['re] willing to sell the grams [of heroin] at a nice price [be]cause we['re] doing good right now," meaning the Fitzgerald organization was making good money. John stated that the organization was selling

2

seventy to eighty bricks a day and that each brick was selling for $350. John told Spencer that he would get Spencer a price on the heroin and instructed Spencer to call the next day for the price. John also told Spencer that he would let the "two guys in the house by the phones" know why Spencer was calling and to give Spencer the price that was agreed upon. John further indicated that if Spencer was not satisfied with the price that they could "rearrange things" and that "something can always be worked out." At the conclusion of the meeting, John said that things had been "working for us for four years straight."

One means by which the members of the organization communicated was through cellular telephones that the Fitzgeralds provided to their employees. During their various telephone communications, members of the organization discussed matters related to the trafficking of heroin and cocaine.

Between November 19, 2002, and December 17, 2002, the members of the Union County Prosecutor's Office Narcotics Strike Force— which included officers from the Elizabeth Police Department, the United States Drug Enforcement Administration (DEA), the Union County Prosecutor's Office and the Linden Police Department— were involved in a wiretap investigation in which they monitored intercepted telephone calls within the Fitzgerald organization. Pursuant to a warrant, the police wiretapped three cellular phone numbers used by members of the Fitzgerald organization. The phone numbers were in the name of "Tamisha Fitzgeral" or "Tamisha Fitzgerald." The phones were identified as Wiretap 4, Wiretap 4 push-to-talk, Wiretap 5, Wiretap 5 push-to-talk, Wiretap 6 and Wiretap 6 push-to-talk.

The monitor stations for these phones were in the same room, and all of the officers monitored each of the wiretapped phones. During the monitoring, a computer recorded: the date, time and duration of the call; the number of the phone being used; the number that was dialed; the wiretap number from which the call originated; and whether the call was incoming or outgoing. The officers monitored the calls by listening to each one and determining whether it was pertinent to the investigation. If so, the officer listened to the call, and once the call was completed, the officer would write a synopsis or a verbatim transcription. As the officers monitored the phone calls, they provided information to law enforcement teams conducting surveillance upon the Fitzgeralds and other associates of the organization.

3

Following the completion of the wiretap investigation, Detectives John Sheridan and Suzanne Deegan were able to determine the individuals who used each of the wiretapped phones based on the familiarity with the individuals' voices the detectives developed over the course of the investigation. Detective Sheridan concluded that Wiretap 4 was primarily used by those who sold drugs at the Elizabeth apartment, including Britt, Aviles and Hiett, as well as Al Raheem Campbell and Al Shariek Harris. This phone was continuously in contact with Wiretap 5 and Wiretap 6. Dawud was the primary user of the phone under Wiretap 5, and Dawshon was the primary user of the phone under Wiretap 6.

The computer used during the wiretap investigation recorded the phone numbers of the incoming and outgoing calls, which included landline phone numbers. Based on this information, the police obtained phone subscriber information, from which the police ascertained the identities and addresses of the Fitzgerald brothers, as well as those of their associates and the organization's stash houses.

On December 17, 2002, at 6:00 a.m., officers from the Elizabeth Police Department, the DEA, the Union County Prosecutor's Office, the Newark Police Department, and the Roselle Police Department simultaneously executed nine search warrants at the Elizabeth apartment, five other Elizabeth apartments, the Newark apartment, and a Roselle apartment.

Dawmeen was arrested at one of the Elizabeth apartments. A total of $89,241 was found hidden in various locations throughout the apartment, including inside dresser drawers, under a baby's crib mattress, and under the couch.

Dawud was arrested at another of the Elizabeth apartments, where he was found hiding in a closet. In the residence, Detective Deegan found the cellular phone that was the subject of Wiretap 5. The police also recovered a total of $6447 at that location.

Dawshon was arrested at the Newark apartment. The police found the cellular phone that was the subject of Wiretap 6.

From these nine locations, the police recovered, among other things: the cellular phones that were the subject of the wiretaps; items used to weigh and package drugs and drug paraphernalia; a total of 188.876 grams of heroin, 3.2 grams of cocaine and 99.39 grams of

4

procaine (a prescription anesthetic); and a total of $739,289 in cash.

*State v. Fitzgerald*, No. A-5134-09T3, 2012 WL 469779, at *2-5 (N.J. Super. Ct. App. Div. Feb. 15, 2012).

Following a jury trial, Petitioner and his brothers were convicted of the following: first-degree leader of a narcotics trafficking network, N.J.S.A. 2C:35–3 (Count One); second-degree conspiracy to distribute a controlled dangerous substance (CDS), heroin and/or cocaine, N.J.S.A. 2C:35–5a(1), N.J.S.A. 2C:35–5b(2), and N.J.S.A. 2C:5–2 (Count Two); second-degree employment of a juvenile in a drug distribution scheme, N.J.S.A. 2C:35–6 (Count Three); first-degree maintaining or operating a CDS production facility, heroin and/or cocaine, N.J.S.A. 2C:35–4 (Count Four); two counts of third-degree possession of heroin, in violation of N.J.S.A. 2C:35–5a(1) and N.J.S.A. 2C:35–5b(1) (Dawmeen Count Six); two counts of third-degree possession of heroin, N.J.S.A. 2C:35–10a(1) (Dawud, Dawshon Counts Five and Eleven); first-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35–5a(1) and N.J.S.A. 2C:35–5b(1) (Dawud, Dawshon Count Six); two counts of third-degree distribution of heroin within 1000 feet of school property, N.J.S.A. 2C:35–7 (Counts Seven and Thirteen); two counts of third-degree possession of cocaine, N.J.S.A. 2C:3510a(1) (Counts Eight and Fifteen); second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35–5a(1) and N.J.S.A. 2C:35–5b(2) (Count Nine); two counts of third-degree distribution of cocaine within 1000 feet of school property, N.J.S.A. 2C:35–7 (Counts Ten and Seventeen); second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35–5a(1) and N.J.S.A. 2C:35–5b(2) (Count Twelve); second-degree distribution of heroin within 500 feet of a public park, N.J.S.A. 2C:35–7.1 (Count Fourteen); third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35–5a(1) and

N.J.S.A. 2C:35–5b(3) (Count Sixteen); second-degree distribution of cocaine within 500 feet of a public park, N.J.S.A. 2C:35–7.1 (Count Eighteen); first-degree financial facilitation of criminal activity, N.J.S.A. 2C:21–25 (Count Nineteen); third-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39–5f (Count Twenty); and second-degree possession of a firearm during the commission of a controlled dangerous substance offense, N.J.S.A. 2C:39–4.1 (Count Twenty–One). *Id.* at \*1.

After mergers, the trial judge sentenced each of the Fitzgerald brothers to an aggregate sentence of life imprisonment plus 100 years, with a sixty-five year period of parole ineligibility. *Id.* This sentence included an extended term, pursuant to N.J.S.A. 2C:43–6f, of life imprisonment with a thirty-year period of parole ineligibility on the conviction of first-degree leader of a narcotics trafficking network (Count One). *Id.* Petitioner and his brothers individually filed notices of appeal, which the Appellate Division consolidated, then affirmed the convictions and remanded for resentencing based on *State v. Natale*, 878 A.2d 724 (N.J. 2005) and to address merger issues. *State v. Fitzgerald*, No. A-1282-05T4, 2008 WL 2572617 (N.J. Super. Ct. App. Div. June 30, 2008). The remand resulted in the same aggregate sentences being imposed on Dawmeen and Dawud; Dawshon's aggregate sentence remained the same except that his period of parole ineligibility was reduced by five years to a sixty-year period. *Fitzgerald*, 2012 WL 469779, at \*1. Petitioner filed a petition for certification to the New Jersey Supreme Court, which was denied. *State v. Fitzgerald*, 960 A.2d 392 (N.J. 2008).

Each of the Fitzgerald brothers filed individual petitions for post-conviction relief ("PCR"), which were denied by the trial court. *Fitzgerald*, 2012 WL 469779, at \*1. The Appellate Division consolidated their appeals and denied them in one opinion. *Id.* Petitioner filed a

petition for certification with the New Jersey Supreme Court, which was denied. *State v. Fitzgerald*, 56 A.3d 394 (N.J. 2012). On July 4, 2013, Petitioner filed his Amended Petition for a Writ of Habeas Corpus with this Court. (ECF No. 9.) He raises the following grounds for relief:

> Ground One: The petitioner was denied his Sixth Amendment constitutional right to effective assistance of trial counsel by counsel's failure to: (A) subject the state's case to an adversarial testing during the pretrial suppression hearing to challenge the admissibility of evidence pursuant to wiretap warrants and no-knock search warrants; (B) to object to the state admission of numerous hearsay wiretap tapes and testimony; (C) to object to prosecutorial misconduct of the state's reliance on an untested informant; and (D) failing to object to erroneous jury instructions.

> Ground Two: The trial court committed plain error in its jury charge.

> Ground Three: The trial court erred by repeatedly instructing the jury to consider the defendant's "guilt or innocence."

> Ground Four: The trial court failed to provide the jury adequate guidance on how they should assess the credibility of co-defendants Angel Aviles and Sherrod Britt in light of the plea agreements they entered into with the state.

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> . . .

7

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"§ 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.*

A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d).[2] If a claim has been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Pinholster*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).   "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's]

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.   However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410).   "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S.Ct. at 1398.

**B.   Analysis**

**1.   Ineffective Assistance of Counsel (Ground One)**

In Ground One, Petitioner asserts that trial counsel was constitutionally ineffective in (A) failing at the suppression hearing to adequately challenge the admissibility of evidence obtained pursuant to wiretap warrants and no-knock search warrants; (B) failing to object to hearsay in the wiretapped recordings and testimony; (C) failing to object to the State's reliance on an untested informant; and (D) failing to object to erroneous jury instructions.   (Pet. 25, ECF No. 5.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI.   The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.   *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.   *See Strickland*, 466 U.S. at 687.   First, the

10

defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Pinholster*, 131 S.Ct. at 1403 (citing *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688). A "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 131 S.Ct. at 788 (citing *Strickland*, 466 U.S. at 687). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if

11

> the defendant has met the burden of showing that the decision
> reached would reasonably likely have been different absent the
> errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

## a. Suppression Hearing

In Ground One (A), Petitioner asserts that counsel was ineffective in failing to "subject the State's case to an adversarial testing during the pretrial suppression hearing to challenge the admissibility of evidence obtained pursuant to wiretap warrants and no-knock search warrants." (Am. Pet. ¶ 12.)   In support of this ground, Petitioner relies on his PCR appellate brief wherein he argued that counsel should have challenged the qualifications of the police officers who sought the wiretap as well as the finding of probable cause for issuance of the wiretap and sought disclosure of the identities of the confidential informants.   (Resp't's Answer, Ex. Ra6, Pet'r's PCR Appeal Br. 26-27, ECF No. 14-7.)   This argument was rejected by the Appellate Division.

> The record reveals that defense counsel did challenge the wiretap
> application. Before trial, Dawshon, joined by Dawud, Dawmeen and
> John, filed a motion to suppress on the grounds that the applications
> for the wiretap warrants neither satisfied statutory requirements nor
> met constitutional standards. Specifically, defendants argued that
> the State did not comply with N.J.S.A. 2A:156A–9, which sets forth
> the requisite information that must be contained in an application for
> an order authorizing the interception of a wire communication.
> Defendants asserted that the two detectives who completed these
> applications did not specifically set forth their qualifications—i.e.,
> that they had the requisite knowledge, experience or training to
> interpret the words, terms or phrases used by individuals engaged in

12

drug trafficking in general and by members of the Fitzgerald organization in particular—as required by N.J.S.A. 2A:156A–9.

The trial judge found that the qualification requirements in N.J.S.A. 2A:156A–9 apply only to a law enforcement officer's ability to properly operate the electronic equipment used to intercept the wire communications, not to an officer's ability to decipher the codes or meanings of certain words. The court noted that the detectives had clearly set forth their qualifications in their respective applications to the issuing judge. The court also concluded that the warrants were based on probable cause, as established through surveillance, Informant B's representation about the structure of the organization and the controlled buys from John and Dawshon's previous arrest. The record supports the judge's denial of defendants' motion to suppress. Dawmeen cannot establish ineffective assistance of counsel on the issue of the wiretap because Dawmeen's attorney joined the motion to suppress, and the motion was meritless.

...

Dawmeen also asserts that the disclosure of the identities of the confidential informants would have been relevant and helpful to his defense. He alleges that, following disclosure, he would have been in a position to challenge the veracity of the contents of the wiretap application. N.J.R.E. 516 permits the State to refuse to disclose as privileged the identity of a confidential informant. *State v. Williams*, 364 N.J.Super. 23, 38 (App.Div.2003). Evidence of the informant's identity is inadmissible unless the trial judge determines that the identity of the informant is essential to a fair determination of the issues. *Ibid.* Courts have required disclosure when the informant was directly involved or played an integral role in the crime for which the defendant has been indicted. *State v. Milligan*, 71 N.J. 373, 386–87 (1976). On the other hand, absent a strong showing of need, courts generally deny disclosure where the informant plays only a marginal role, such as providing information or "tips" to the police or participating in the preliminary stage of a criminal investigation. *Id.* at 387.

Dawmeen has made no showing of how disclosure of the informant's identity would be helpful to his defense. Dawmeen does not argue that the informants were integrally involved in the Fitzgerald organization, and there is little evidence in the record to support such a contention. The detectives' affidavits and testimony indicate that the informants assisted the police in identifying the leaders of the

13

Fitzgerald organization, but the police had many other sources of information to corroborate the informants' accounts. Dawmeen's claim of error is without merit.

Dawmeen challenges counsel's conduct regarding the "no-knock" warrant. The requirement that law enforcement officers knock and announce their presence before entering a dwelling predates our federal and state constitutions. *State v. Johnson*, 168 N.J. 608, 615 (2001). To justify a no-knock entry, the police must establish a reasonable, particularized suspicion that such an entry is required to prevent the destruction of evidence, to protect officer safety or to effectuate an arrest or seizure of evidence. *Id.* at 619. The officer must articulate those reasons based on the totality of the circumstances with which the officer is faced, including a minimum level of objective justification. *Ibid.*

...

Assuming, arguendo, that Dawmeen's claim may proceed, the no-knock warrants were valid and executed properly. Detective Sheridan articulated the basis for the no-knock warrant in his affidavit: it was "reasonable to conclude that the conspirators in this narcotics distribution conspiracy are armed and dangerous" and that there "exists a reasonable, articulable and particularized suspicion that a no-knock entry was required to protect police officers' safety and to effectuate the arrests and seizures of evidence when the warrants are executed."...Based on the totality of the circumstances, the police had a reasonable, particularized suspicion to justify a no-knock entry in order to prevent the destruction of evidence, to protect officer safety and to effectuate arrests or seizures of evidence. *See Johnson, supra,* 168 N.J. at 619. Dawmeen cannot demonstrate that he would have prevailed on a motion to suppress the evidence seized pursuant to the no-knock warrant.

*Fitzgerald*, 2012 WL 469779, at *21-23.

Petitioner is not entitled to relief on this ground.   The state court thoroughly and properly applied *Strickland* to the allegations of ineffective assistance and found them to be without merit. Specifically, the court found that counsel acted reasonably and properly when challenging the warrants and even assuming arguendo that he did not, Petitioner suffered no prejudice as a result.

14

*Id.* Because the state court decision was not contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, Petitioner is not entitled to habeas relief on this ground.

**b.  Failure to Object to Admission of Hearsay**

Petitioner argues in Ground One (B) that counsel was deficient in failing to object to the admission of unspecified hearsay in the wiretaps and testimony.   Petitioner raised this argument on PCR, wherein he argued generally that counsel failed to object when Aviles and Britt testified with respect to recorded conversations to which Petitioner was not a party.   (Resp't's Br., Ex. Ra8, Pet'r's PCR Br. 23-24, ECF No. 14-9.)   The Appellate Division rejected this ground without discussion.

The Court notes that Petitioner has not identified in his § 2254 Petition or his state briefs the hearsay to which he claims his attorney should have objected.   As such, Petitioner has not shown that the Appellate Division unreasonably applied *Strickland* when it rejected this unsupported claim and he is not entitled to habeas relief.

**c.  Failure to Object to Reliance on an Untested Informant**

In Ground One (C) Petitioner asserts that counsel was deficient in failing to object to Detective Sheridan's reliance on an untested informant in his affidavit seeking the warrants. Petitioner raised this claim in his pro se supplemental PCR brief, wherein he stated that

> In the affidavit in support of the wiretap warrants, Detective Sheridan knowingly misrepresented the credibility of Informant B, by averring to the reliability and past use of this informant, when the informant had actually never been previously used or tested.

15

(Resp't's Br., Ex. Ra8, Pet'r's PCR Br. 26, ECF No. 14-9.)

The Appellate Division found that counsel was not deficient in failing to file a motion to suppress on the basis of this alleged misrepresentation because the motion would have failed. Specifically, the Appellate Division found:

> Here, Detective Sheridan, who signed the affidavit of probable cause in support of the wiretap warrant, based his request on, among other things, what Dawshon characterizes as "[i]nformation received from an untested informant, hereinafter referred to as Informant B, whose reliability has been established in that information provided by Informant B has been corroborated by [Detective Sheridan]." The information provided by Informant B was corroborated by the plethora of other evidence cited in Detective Sheridan's affidavit, including multiple controlled drug purchases, witnessed narcotics activity and the defendants' extensive criminal records. This evidence was obtained from numerous sources, including Detective Sheridan, other Elizabeth police officers, a reliable confidential informant (Informant A), police department records, and telephone records. Dawshon has failed to show that, viewed within the totality of the circumstances, a challenge to the wiretap search warrant would have been meritorious.

*Fitzgerald*, 2012 WL 469779, at *17-18.[1]

Here, the state court properly applied the *Strickland* test to evaluate trial counsel's performance regarding the warrants and found that counsel was not ineffective. The court determined that there was a substantial amount of evidence to corroborate the information obtained from Informant B and therefore any challenge to the wiretap warrant on that ground would have failed. *Id.* Accepting the state court's unrebutted factual determinations as correct, *see* 28 U.S.C.

---

[1] The Appellate Division discusses this issue in the context of an argument raised by Petitioner's brother Dawshon, however, as stated by the court, "Defendants raise duplicate arguments, and our resolution of these issues as to one defendant applies with equal force as to the others." *Fitzgerald*, 2012 WL 469779, at *25.

§ 2254(e)(1), the Court finds that the state court decision was not contrary to, and did not involve an unreasonable application of, the *Strickland* test.   Habeas relief is denied on this ground.

**d.   Failure to Object to Erroneous Jury Instructions**

In Ground One (D), Petitioner argues that counsel was deficient in failing to object to erroneous jury instructions.   Petitioner raised this claim in his pro se supplemental PCR brief, wherein he stated that:

> During the trial court's instruction from the Model Jury Charge for accomplice liability, the trial court erroneously omitted an entire page or crucial section from the Model Charge.   The trial court also erroneously failed to explain to the jury its obligation to consider the accomplice status separately for each defendant. Such omissions were overwhelmingly prejudicial, and contaminated the entire trial process with error.
>
> During the court's instructions on conspiracy, the trial court erroneously interjected a section of the vicarious liability instruction, which undermined the entire conspiracy instruction.
>
> The trial court never instructed the jury that the vicarious liability instruction related to defendant's criminal culpability and should be considered in conjunction with the accomplice liability, and not the conspiracy offense. This error contaminated the entire trial process, and deprived the defendant of his due process right to a fair trial.

(Resp't's Br., Ex. Ra8, Pet'r's PCR Br. 28, ECF No. 14-9.)

On appeal from the order denying post-conviction relief, the Appellate Division found that counsel was not deficient in failing to challenge the accomplice liability instruction because, "while a portion of the Model Charge was omitted, that portion generally repeated the charge the jury received [and], although the court does not appear to have specifically charged the jury that it had to consider accomplice liability separately for each defendant, the charge given implies that such consideration should have occurred."   *Fitzgerald*, 2012 WL 469779 at *18.   The Appellate

Division also found that counsel was not deficient in failing to challenge the vicarious liability and conspiracy instructions, as these instructions were not erroneous:

> Given the facts of the case, that Dawshon was alleged to have operated a drug trafficking network with multiple "employees," charging the jury on both conspiracy and conspiracy based on vicarious liability was appropriate.
>
> …
>
> As addressed above, the vicarious liability instruction properly related to the conspiracy offense. Furthermore, assuming, arguendo, that the trial court should have instructed the jury that the vicarious liability instruction related to the accomplice liability instruction but failed, it is unclear in what way the judge's failure to do so prejudiced Dawshon. If anything, such an omission would benefit Dawshon, since it would mean that the jury could find Dawshon guilty of accomplice liability based only on direct, not vicarious, liability.

*Id.*

Because "counsel cannot be deemed ineffective for failing to raise a meritless claim," the New Jersey court was not unreasonable in its application of *Strickland* when it concluded that counsel was not deficient in failing to challenge the accomplice liability and conspiracy instructions. *Ross v. Dist. Attorney of the Cty. of Allegheny*, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000)).

## 2. Jury Instructions (Grounds Two, Three, Four)

In Ground Two, Petitioner alleges that the trial court committed "plain error" in its jury instructions.[2]  (Am. Pet. ¶ 12.)  In Ground Three, Petitioner alleges that the trial court erred by "repeatedly instructing the jury to consider the defendant's guilt or innocence." (*Id.*)  In Ground

---

[2] This does not appear to be a substantive ground for relief but instead a title heading for the more specific claims in Grounds Three and Four.

Four, Petitioner alleges that the trial court erred when it failed to provide the jury adequate guidance on how they should assess the credibility of co-defendants Angel Aviles and Sherrod Britt in light of the plea agreements they entered into with the state. (*Id.*) Petitioner raised these claims on direct appeal, where they were rejected by the Appellate Division. *Fitzgerald*, 2008 WL 2572617, at *11. The court found Grounds Two and Three insufficient to warrant a written discussion, but addressed Ground Four. *Id.*

In *Waddington v. Sarausad*, 555 U.S. 179 (2009), the Supreme Court emphasized the established principle that an ambiguity, inconsistency, or error in a state instruction does not violate due process unless the defendant also shows that "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 191 (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Estelle*, 502 U.S. at 72). "[T]he pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.*

In Ground Three, Petitioner argued that the fact that the court used the phrase "whose guilt or innocence you are considering" several times in the instructions implied the burden was on Petitioner to prove his innocence. (Resp't's Br., Ex. Ra30, Trial Tr. 29:9-13; 39:20-23; 50:18-22, ECF 15-10.) Upon review of the instructions in their entirety, it is clear that the trial court properly informed the jury about the standard to be used. Specifically, at the close of evidence, the court stated the following:

19

> [E]ach defendant sits in this courtroom assumed to be innocent,
> unless and until you find the State has proven them guilty of, at least,
> one of these crimes and all of their elements beyond a reasonable
> doubt. The burden of proof is on the State and it never shifts. There
> is no burden with respect to proof imposed upon the defendant. No
> defendant is obliged to prove that he's innocent. He sits in this
> courtroom assumed to be innocent.

(Resp't's Br., Ex. Ra30, Trial Tr. 10:17-11:1, ECF No. 15-10.)   The trial court further instructed

the jurors to determine "not only whether the State has proved each and every element of the

offense charged beyond a reasonable doubt, but also whether the State has proven beyond a

reasonable doubt that the defendant is the person who committed the crime."   (*Id.* at 14:6-10.)

The sporadic references to "guilt or innocence" in the context of the entire jury instructions did

not operate to shift any burden from the state.   The court clearly and unequivocally stated that

Petitioner was innocent until proven guilty and the burden was on the state to prove guilt.   As

such, the state court properly rejected this claim and Petitioner is not entitled to habeas relief.

With regard to Ground Four, the Appellate Division found as follows:

> By way of Point IIB, Dawmeen argues that the trial judge did not
> instruct the jury "to look carefully into the secret motives" of the
> accomplice testimony given by Aviles and Britt, citing in support,
> *State v. Spruill*, 16 N.J. 73, 78, 106 A.2d 278 (1954). Dawmeen
> claims that the trial judge should have instructed the jury that Aviles
> and Britt "had a strong motivation to inculpate the defendant"
> because of their plea agreements with the State and that the trial
> judge's failure to so instruct the jury on the accomplice testimony
> was plain error.
>
> ...
>
> At the beginning of the charge, the judge instructed the jury that one
> of their jobs was to determine the credibility of witnesses, and
> further instructed the jury as follows:
>
> > There is testimony in the case from Aviles and
> > Sherrod Britt and they testified to facts which

20

> showed some involvement, on their part, in the criminal situation out of which the indictments arose. The law requires that the testimony of such a witness be given careful scrutiny. In weighing their testimony, therefore, you may consider whether each had a special interest in the outcome of the case and whether his testimony was influenced by the hope or expectation of any favorable treatment or reward or by any feelings of revenge or reprisal.
>
> If you believe the witness to be credible and worthy of belief you have a right to convict any defendant on their testimony alone provided, of course, that upon consideration of the whole case you are satisfied beyond a reasonable doubt of the defendant's guilt.

This charge is fully in accord with Model Jury Charge (Criminal), "Testimony of a Cooperating Co-Defendant or Witness" (2006).

Dawmeen does not appear to challenge the use of the model charge but contends that the charge given was inadequate because it failed to include language suggested by *State v. Spruill*. In that case, the defendant had unsuccessfully sought an instruction that the jury carefully scrutinize accomplice testimony for evidence that it was influenced by a strong hope of favor or pardon. 16 N.J. at 76-77, 106 A.2d 278. On appeal, the Court reversed and stated:

> It is settled law in New Jersey that a jury may convict a prisoner upon the testimony of an accomplice alone, if, in their judgment, it is entirely credible and worthy of belief. But the testimony of an accomplice is given close scrutiny. Accomplices, tainted as they are with confessed criminality, are often influenced in their testimony by the strong motive of hope of favor or pardon; and so it is incumbent upon the courts to "look carefully into the secret motives that might actuate bad minds to draw in and victimize the innocent."

Although there may be times when the language of the model jury charge ought to be enhanced by particular reference to this dictum in *State v. Spruill*, we are satisfied that the charge given here was sufficient.

21

No party is entitled to have the jury charged in his or her own words. All that is necessary is that the charge as a whole be accurate. *Largey v. Rothman*, 110 N.J. 204, 206, 540 A.2d 504 (1988). The trial judge in this case appropriately used the model charge on cooperating witness testimony and further advised the jury on credibility in general as follows:

> Now, one of your jobs, as the judges of the facts, is to determine the believability, the credibility of each of the witnesses and in going about that task, in addition to using whatever life skills you use on a daily basis to determine whether you believe somebody who is speaking to you or not, you may wish to take into account such other things as the appearance and demeanor of the witness; the manner in which the witness may have testified; their interest in the outcome of the trial, if any; their means of obtaining knowledge of the facts; their power of judgment, discernment or understanding; their ability to reason and observe; the possible bias in favor of the side for whom the witness testified, if any; the extent to which the witness has been supported or contradicted by other evidence; whether the witness testified with an intent to deceive you; reasonableness or unreasonableness of the story the witness has related; and any and all other matters in evidence which serve to highlight their testimony to you.

As already noted, only Dawmeen challenges the sufficiency of this charge, but he did not request at trial that the judge instruct the jury as to the impact of the plea agreements of Aviles and Britt on their credibility or request stronger language than that given by the judge through his utilization of the model charge. It also bears noting that both Aviles and Britt were extensively examined and cross-examined about their plea agreements and their own involvement in the Fitzgerald organization. In addition, in their closing arguments, several of the defense attorneys highlighted the criminal backgrounds of Aviles and Britt, their lack of credibility, inconsistencies in their testimony, and their motivation to fabricate in order to obtain favorable treatment on their own charges. In fact, when discussing the State's evidence in his summation, counsel for Dawud mentioned "a couple snitches who allege to be telling the truth" and referred to Aviles a "liar"; counsel for Dawmeen argued

22

> that Aviles was actually the "leader" but lied to make defendants look like they were in charge; and counsel for Dawshon advised the jury to take the testimony of Aviles and Britt with a "grain of salt" because they pled guilty and received lighter sentences.
>
> In light of all this, we are abundantly satisfied that the trial judge's decision not to enhance the model jury charge regarding the plea agreements or the witnesses' alleged motivation to inculpate defendants was not clearly capable of producing an unjust result. R. 2:10-2.

*Fitzgerald*, 2008 WL 2572617, at *11-13 (internal citations omitted).

Again, nothing in the trial court's jury instruction regarding the testimony of Aviles and Britt in any way shifted the burden from the state to prove every element of the crime beyond a reasonable doubt.   The court utilized the model jury instructions and sufficiently advised the jury to evaluate the credibility of testifying witnesses, which included Britt and Aviles.   The fact that the jury gave weight to their testimony despite their potential motives for doing so does not change the appropriateness of the instructions.   Consequently, the Court finds that the state court's holding was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.   Habeas relief is denied on this ground.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.[3]   An appropriate Order follows.

Dated:

Peter G. Sheridan, U.S.D.J.    8/22/16

---

[3] Petitioner has requested "discovery" which he argues is required for the Court's adjudication of his Petition.  (ECF Nos. 18, 21, 23, 27).  To the extent said discovery was not already provided by the State, the Court finds it is not necessary for its review of Petitioner's claims.